STATE of Missouri, Plaintiff–
Respondent,

v.

Nicholas MOUSE, Defendant–Appellant.

No. 22132.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 18, 1999.

Motion for Rehearing or Transfer to
Supreme Court Denied March 12, 1999.

Application for Transfer Denied
April 27, 1999.

William J. Fleischaker, Roberts, Fleischaker, Williams, Wilson & Powell, Joplin, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Nicholas Mouse (defendant) appeals a judgment of conviction for the offense of assault in the first degree. § 565.050.[1] Defendant contends the trial court erred in refusing to allow a witness he tendered as an expert to testify concerning his state of mind at the time the offense was committed. He further asserts three claims of instructional error. Defendant does not challenge the sufficiency of the evidence. This court affirms.

William Wilkerson was talking on the telephone in his residence in Jasper County. The doorbell rang and there was a knock on the door. Mr. Wilkerson saw defendant standing at his front door and told him to come in. Defendant entered the house. Mr. Wilkerson continued talking on the telephone. Defendant attacked Mr. Wilkerson with a knife. He stabbed him at least 12 times, then ran from the house.

Mr. Wilkerson was able to call 911 for assistance. He was transported to Freeman Hospital in Joplin. He had sustained life threatening stab wounds. His family was told he would probably not survive the night.

Defendant was arrested the same night. At the time of his arrest, defendant had numerous small cuts on his hands. He told the arresting officer that he left his residence and went to a convenience store to purchase beer. He said he went to a Burger King restaurant to eat, then to Wilkerson's residence. According to defendant Mr. Wilker-

---

1. References to statutes are to RSMo 1994 unless stated otherwise.

son was talking on the telephone. Defendant said Wilkerson motioned him to come inside and told defendant, "Hi, Indian, be with you in a minute." Defendant said he remembered reaching into his pocket, pulling out a pocketknife and unfolding it. He said he remembered scuffling with Mr. Wilkerson. Defendant said he noticed a large knot on Wilkerson's head; that he asked himself what he had done.

When defendant left the Wilkerson residence, he went to the home of a friend, Michael East. He threw his remaining beer cans and his knife out the window of his vehicle on the way to the East house. Defendant told Michael East he needed to hide his truck "because the cops would be looking for him."

Defendant took a shower while he was at the East residence, then left. He went to another friend's house. He left the second residence. Richard Getty saw him standing by a fence along the roadway and picked him up. At Mr. Getty's suggestion, defendant turned himself in to the sheriff's office.

Point I is directed to defendant's attempt to present the testimony of Dr. Tim McCarty, a psychologist, at trial. Prior to trial the state filed a motion in limine. The motion requested the trial court to prohibit defendant from presenting "evidence of voluntary intoxication or voluntary drug use on the issue of defendant's state of mind." It asserted, "That defendant intends to introduce evidence of defendant's voluntary intoxication and voluntary drug use, on or prior to the date of the offense, on the issue of defendant's state of mind." It alleged defendant intended to introduce evidence of voluntary intoxication through expert testimony; that he intended to ask an expert witness to draw conclusions regarding how defendant's voluntary use of alcohol and drugs affected defendant's mental condition. The trial court granted the state's motion in limine.

During the course of trial defendant sought to present testimony by Dr. McCarty. The testimony was refused in accordance with the trial court's order granting the motion in limine. An offer of proof was made. The offer of proof was refused by the trial court.

Point I contends the trial court erred by not allowing defendant's expert witness to testify regarding defendant's state of mind. It asserts defendant should have been permitted to present expert testimony to show "he suffered from a mental disease or defect that prevented him from knowing and appreciating the nature, quality and wrongfulness of his conduct at the time of the offense because [he] entered a plea of not guilty and not guilty by reason of mental disease or defect excluding responsibility"; that the testimony presented in defendant's offer of proof disclosed "defendant was suffering from a substance induced psychotic disorder at the time of the assault on William Wilkerson and such condition is a mental disease or defect" that prevented defendant from knowing and appreciating the nature, quality or wrongfulness of his conduct.

The record on appeal does not include any record of proceedings at which defendant entered a plea of not guilty by reason of mental disease or defect excluding responsibility. *See* § 552.030.2. Defendant's statement of facts includes, "At his arraignment on the information, the defendant entered a plea [sic] of not guilty and not guilty by reason of mental disease or defect excluding responsibility." No part of the record on appeal is identified as authority for the statement, although defendant was obviously aware of the deficiency. The statement is followed by "(LF—?)". No reason is given as to why the deficiency was not corrected.

As observed in *Hammack v. White*, 464 S.W.2d 520 (Mo.App.1971):

Normally, on review, we are bound by the record. We may not notice or accept a statement of a fact asserted in a brief which is not supported by the transcript. *Avalon Development Company, Inc. v. American Italian Construction and Development Company, Inc.*, Mo.App., 437 S.W.2d 702, 703[1]. Neither can we determine what was filed or done in the trial court on the basis of such a statement. *Lubrication Engineers, Inc. v. Parkinson*, Mo.App., 341 S.W.2d 876, 879[9].

*Id.* at 522. *Hammack* noted, however, that an exception to the requirement that facts be

supported in the record occurs when adversary counsel concedes the issue in his brief. *Id.* As stated in *State v. Bowling*, 734 S.W.2d 565, 568 (Mo.App.1987), citing *Hammack*, "Where a statement of fact is asserted in one party's brief, and conceded to be true in the adversary's brief, we may consider it as though it appeared in the record."

The state's brief does not challenge the statement that defendant timely pleaded not guilty by reason of mental disease or defect excluding responsibility. It addresses Point I of defendant's brief on the merits. This court interprets the state's response as a concession that the plea was timely entered. Point I will be reviewed on its merits. It is appropriate, nevertheless, to suggest that appellate counsel responsible for providing records on appeal not rely on tacit accommodation by adversary counsel to cure defects that could be readily avoided by providing complete records of trial court proceedings.

Dr. McCarty was prepared to testify that defendant suffered from substance-induced psychosis, i.e., a psychotic disorder triggered by controlled substances. Dr. McCarty stated in defendant's offer of proof that substance-induced psychosis is a mental disease. He gave the opinion that the triggering mechanism for the ailment defendant had at the time he assaulted William Wilkerson was use of amphetamines.

Dr. McCarty was asked the following questions and gave the following answers:

Q. Isn't it true that when you make a diagnosis of substance induced psychosis that the psychosis has to be a direct result of the substance induced?

A. Absolutely.

Q. Okay, and that when you make a diagnosis of substance induced psychosis you eliminate other types of psychosis, isn't that correct?

A. Right.

Q. So substance induced psychosis, when you make that finding, you're finding that he has no other psychosis, isn't that true?

A. Right.

. . .

Q. And that the substance that triggered the psychosis in this case in your opinion was [defendant's] use of methamphetamines, isn't that true?

A. Uh-huh.

■ Dr. McCarty agreed that defendant's use of amphetamines was a voluntary act. He stated the opinion that defendant's substance-induced psychosis was a direct result of voluntary use of amphetamines.

Section 552.010 defines "mental disease or defect":

The terms **"mental disease or defect"** include congenital and traumatic mental conditions as well as disease. They do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, whether or not such abnormality may be included under mental illness, mental disease or defect in some classifications of mental abnormality or disorder. *The terms "mental disease or defect" do not include alcoholism without psychosis or drug abuse without psychosis....* [Italics added.]

Defendant argues that the italicized part of the statute implicitly states that alcoholism with psychosis or drug abuse with psychosis is a mental disease or defect and, therefore, it was error for the trial court not to permit Dr. McCarty's testimony. That argument, however, was rejected in *State v. McGreevey*, 832 S.W.2d 929 (Mo.App.1992). In *McGreevey*, a psychologist's testimony was offered to show a defendant suffered from a psychosis that was characterized as "'an idiosyncratic intoxication reaction to cocaine use,' or a 'cocaine induced delirium or dementia'" at the time the charged offense was committed. *Id.* at 931.

The Western District of this court, relying on *State v. Woltering*, 810 S.W.2d 584, 587–88 (Mo.App.1991), and *State v. Elam*, 779 S.W.2d 716, 717 (Mo.App.1989), found there was no support for the proposition that a drug-induced psychosis constituted a mental disease or defect within the purview of § 552.010. *McGreevey* held that

§ 562.076.1 [2] applied to the facts of that case. Because the drugged and demented condition Mr. McGreevey experienced was not the result of an involuntary act, he could not avail himself of a mental disease or defect defense. 832 S.W.2d at 931.

There is no evidence in this case that defendant's ingestion of amphetamine was involuntary. The offer of proof that defendant suffered from a mental disease or defect was based on voluntary use of amphetamines by defendant. Consistent with *McGreevey*, Point I is denied.

Points II, III and IV allege instructional error. Point II asserts error in the giving of Instruction No. 5 patterned after MAI–CR 3d 310.50. Points III and IV assert error in failing to give Instructions No. A, B and C.

■ Instruction No. 5 states:

The state must prove every element of the crime beyond a reasonable doubt. However, in determining the defendant's guilt or innocence, you are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct.

Defendant argues that the trial court should have refused Instruction No. 5 "because there was no evidence that defendant was intoxicated on alcohol at the time of the offense." He contends he was prejudiced by the giving of the instruction "because it implied to the jury that defendant's bizarre, irrational conduct at the time of the offense was the result of intoxication."

Defendant told the officer who arrested him he purchased beer on two occasions the day Mr. Wilkerson was assaulted, first at a convenience store he identified as "Judy's" and later at "T's Corner." Defendant testified that he threw three beers out of his vehicle after the assault was committed because he did not want to receive "another license charge, DUI or something." He said after he arrived at Mr. Wilkerson's house and went inside, he "started trippin' out." He claimed he heard a "ringing noise"; that he saw "purple dots . . . kind of like a fuzzy t.v. station." He did not remember seeing blood on his clothing or himself. The explanation he gave was that he had "gotten high and stuff."

All that was necessary to support the giving of Instruction No. 5, patterned after MAI–CR 3d 310.50, was evidence that defendant was voluntarily intoxicated.[3] *State v. Owsley*, 959 S.W.2d 789, 795 (Mo. banc 1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 191, 142 L.Ed.2d 156 (1998). There was evidence that defendant consumed beer the day he committed the assault on Mr. Wilkerson. This occurred prior to the time the assault was committed. The evidence was sufficient for the jury to have found defendant was voluntarily intoxicated at the time of the offense. Instruction No. 5 was properly given. *See Owsley, supra*, 959 S.W.2d at 795; and *State v. Taylor*, 944 S.W.2d 925, 936 (Mo. banc 1997).[4] Point II is denied.

■ Point III contends the trial court erred in refusing to give Instructions No. A

---

**2.** *McGreevey* applied § 562.076.1, RSMo 1986. The 1994 revision of that statute is applicable here. There is no change of substance between the two revisions of the statute. §562.076.1 states:

A person who is in an intoxicated or drugged condition, whether from alcohol, drugs or other substance, is criminally responsible for conduct unless such condition is involuntarily produced and deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct.

**3.** *State v. Erwin*, 848 S.W.2d 476 n. 4 (Mo. banc), *cert. denied*, 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993), suggests, "MAI–CR3d 310.50 is unique among all approved instructions in that it is a comment on evidence, albeit irrelevant evidence."

**4.** Defendant cites *State v. James*, 869 S.W.2d 276 (Mo.App.1994), and *State v. Kehner*, 886 S.W.2d 130 (Mo.App.1994), as authority for his assertion that there was no evidence that he was intoxicated at the time of the offense. The requirement for giving an instruction patterned after MAI–CR 3d 310.50 was different when this case was tried from what was required when *James* and *Kehner* were tried. When *James* and *Kehner* were tried it was necessary to have evidence of impairment in addition to consumption of intoxicants in order to give the instruction. *See Kehner*, 886 S.W.2d at 133, and *James*, 869 S.W.2d at 278. It was not necessary to show impairment at the time this case was tried. *State v. Owsley*, 959 S.W.2d at 795.

and B. Defendant argues he was entitled to these instructions "to converse the mental element of the state's verdict director." He contends, "[I]n this case the mental element of attempting to kill or cause serious physical injury is to act purposely and defendant's Instruction A correctly conversed the mental element of acting purposely and Instruction B correctly defined the term purpose or purposely."

Instructions No. A and B state:

### INSTRUCTION NO. A

If you have a reasonable doubt as to whether the defendant had the purpose to kill or cause serious physical injury to William Wilkerson, by stabbing him, you must find the defendant not guilty of assault in the first degree as submitted in Instruction No. ____.

### INSTRUCTION NO. B

The following term used in these instruction [sic] is defined as follows: Purpose or Purposely.

A person acts purposely, or with purpose, with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result.

Instructions No. A and B were directed to the state's verdict-director, Instruction No. 6. It provides:

> If you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about March 3, 1996, in the County of Jasper, State of Missouri, the Defendant attempted to kill or cause serious physical injury to William Wilkerson by stabbing him, and
>
> Second, that defendant in the course of such conduct caused serious physical injury to William Wilkerson,
>
> then you will find the defendant guilty of assault in the first degree, with serious physical injury.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
>
> As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.
>
> If you do find the defendant guilty of assault in the first degree, you will assess and declare one of the following punishments:
>
> 1. Life imprisonment.
>
> 2. Imprisonment for a term of years fixed by you, but not less than ten years and not to exceed thirty years.

Defendant relies on paragraph 3(E) of the 10–1–92 revision of Notes on Use to MAI–CR 3d 308.02 to support the argument that the trial court erred in refusing to give Instruction No. A. Paragraph 3 states "Limitations" on giving converse instructions. Its subparagraph (E) is directed to "Conversing Culpable Mental State When Such is Implicit in a Term That is Not Defined." Paragraph 3(E) states:

> There are verdict directors that do not explicitly include a culpable mental state, but which instead use a term that by definition requires a particular culpable mental state. For example, assault in the first degree by an attempt to kill or cause serious physical injury (MAI–CR 3d 319.06) requires a purpose to kill or cause serious physical injury. "Purposely" is included in "attempt" but the term "purposely" is not used in the instruction, and attempt is not defined. However, a defendant is still entitled to a converse <u>as to the particular required culpable mental state.</u> Such could be worded as follows:
>
> > If you have a reasonable doubt as to whether defendant had the purpose to kill or cause serious physical injury, you must find the defendant not guilty of assault in the first degree as submitted in Instruction No. ____.

. . .

The text of the instruction included in the above example is the same as Instruc-

tion No. A that the trial court refused. However, this text from the 10–1–92 revision of the Notes on Use does not appear in the 7–1–97 revision of MAI–CR 3d 308.02 Notes on Use, the version in effect at the time of defendant's trial.[5] "A trial court errs if it does not instruct the jury in compliance with MAI–CR instructions and applicable notes." *State v. Mee*, 643 S.W.2d 601, 604 (Mo.App. 1982). "Any deviation from the Notes on Use is error, with its prejudicial effect to be judicially determined." *State v. Sours*, 946 S.W.2d 747, 750 (Mo.App.1997). The Notes on Use to MAI–CR 3d 308.02 (7–1–97) did not require the trial court to give Instructions No. A and B.

Defendant argues, nevertheless, that Instruction No. A was a converse instruction he was entitled to have given to the jury. He cites *State v. Collins*, 587 S.W.2d 303, 306 (Mo.App.1979), for the proposition that a "[d]efendant is entitled to a converse instruction in proper form if requested." Notes on Use 2 to MAI–CR 3d 308.02 (7–1–97) confirms a defendant's right to a proper converse instruction. Subject to limitations not applicable to the facts in this case, a converse instruction must be given "upon written request in proper form by the defendant." The required format for a converse instruction is:

> [*Insert one of the following. Omit brackets and number. See Notes on Use 4 as to selection.*]
>
> [1]  Unless you find and believe from the evidence beyond a reasonable doubt that
>
> [2]  If you have a reasonable doubt as to whether
>
> [3]  If you find and believe that
>
> [*Insert the element or elements to be covered in the converse instruction using the language from the verdict director; see Notes on Use for examples.*], you must find the defendant not guilty (under Count _____) of [*name of offense*] as submitted in Instruction No. _____.

MAI–CR 3d 308.02 (7–1–97).

Instruction No. A does not include "the element or elements to be covered in the

converse instruction using language from the verdict director." It was not in the form prescribed by MAI–CR 3d 308.02 (7–1–97). Defendant did not submit the required "written request in proper form." Point III is denied.

■ Point IV contends the trial court erred in refusing to give Instruction No. C. Instruction No. C is a verdict-directing instruction on the lesser included offense of assault in the second degree patterned after MAI–CR 3d 319.12 (10–1–95). It is based on § 565.060.1(3) that states, in pertinent part:

> A person commits the crime of assault in the second degree if he:
>
> . . .
>
> (3) Recklessly causes physical injury to another person; . . .

Instruction No. C provides that if a jury does not find a defendant guilty of assault in the first degree, it is to consider whether he is guilty of assault in the second degree. It directs, under those circumstances:

> If you find and believe from the evidence beyond a reasonable doubt:
>
> That on or about March 3, 1996, in the County of Jasper, State of Missouri, the defendant recklessly caused serious physical injury to William Wilkerson by stabbing then you will find the defendant guilty of assault in the second degree.
>
> . . .

It defines "recklessly":

> A person acts "recklessly" as to causing serious physical injury if he consciously disregards a substantial and unjustifiable risk that his conduct will result in serious physical injury and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

*See* § 562.016.4.

■ As explained in *State v. Garrison*, 975 S.W.2d 460 (Mo.App.1998):

---

5. Notes on Use to MAI–CR 3d were rewritten in its 10–1–98 revision. The 10–1–98 revision includes the text that was omitted from the 7–1–97 revision. *See* MAI–CR 3d 308.02, Notes on Use, paragraph 4(E).

Trial courts need not instruct on a lesser included offense unless the evidence provides a basis for a verdict acquitting the defendant of the greater offense and convicting him of the lesser offense. *State v. Mease*, 842 S.W.2d 98, 110–11 (Mo. banc 1992), *cert. denied*, 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993). This means that the giving of a lesser included offense instruction is limited to those cases where there is some affirmative evidence that could form the basis of an acquittal of the greater offense and a conviction of the lesser included offense. [*State v.*] *McNaughton*, 924 S.W.2d [517] at 527 [ (Mo.App.1996) ]. A defendant is not entitled to a lesser included offense instruction merely because the jury might disbelieve some of the state's evidence or decline to draw some or all of the permissible inferences. *Id.*

*Id.* at 461–62.[6]

The evidence was sufficient for a jury to find defendant guilty of assault in the first degree. Defendant went to Mr. Wilkerson's residence. He entered the residence. He reached into his pocket, pulled out a pocketknife, unfolded it and scuffled with Mr. Wilkerson. Mr. Wilkerson was stabbed at least 12 times during defendant's attack, thereby causing serious physical injury.

Defendant presented no evidence that demonstrated the wounds he inflicted on Mr. Wilkerson were caused by recklessness. There was no affirmative evidence that could form the basis of an acquittal of assault in the first degree and conviction of assault in the second degree. Point IV is denied. The judgment is affirmed.

PREWITT, P.J., and CROW, J., concur.

6. *See State v. Branyon,* 939 S.W.2d 921, 923–24 (Mo.App.1996), for a discussion of the evolution of requirements for instructing on lesser included offenses.