**STATE of Missouri, Plaintiff–Respondent,**

v.

**Willard L. MATTHEWS, Jr., Defendant–Appellant.**

No. 23640.

Missouri Court of Appeals, Southern District, Division One.

Feb. 16, 2001.

Nancy A. McKerrow, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Adriane D. Crouse, Assistant Attorney General Jefferson City, for Respondent.

GARRISON, Judge.

Willard Matthews, Jr. ("Defendant") appeals his conviction for sodomy, § 566.060, RSMo 1994. He raises issues about the admissibility of testimony by two witnesses about the characteristics of children who have been sexually abused, and the trial court's refusal to give a converse instruction tendered by him. We affirm.

In December 1992, Defendant was living in Taney County, Missouri with his son, his wife, Mary, and her daughter, A.J., the victim, who was then twelve years old. A.J. testified that Defendant was the disciplinarian in the family, and, when he felt that she needed to be punished, he would give her a choice of being beaten with a belt or having sexual contact with him. When she chose to be beaten with the belt, he would have her take her clothes off and would use the belt on her back, leaving slashes and open marks on her.

A.J. testified that in December 1992, Defendant took her into her room and told her to take off her pants and underwear. He then put his fingers in her vagina. Later that month, Defendant again decided to punish her. On that occasion, he took A.J. to her room and gave her the choice "between the belt or putting his penis in [her] mouth." Although A.J. did not remember verbalizing a choice, she said that Defendant did place his penis in her mouth on that occasion. A jury found Defendant guilty and, following denial of his motion for new trial, he was sentenced to ten years imprisonment. This appeal followed.

■ Defendant's first point on appeal relates to the testimony, presented by the State, of Judi Crites ("Ms. Crites"), a Licensed Professional Counselor, and Dr. Roy Grando ("Dr. Grando"), a psychologist. Defendant contends that the trial court erred in permitting those witnesses to testify "concerning the characteristics and symptoms of victims of sexual abuse in general, and the characteristics and symptoms seen by them in [A.J.] in particu-

lar...." He argues that the testimony in question was more prejudicial than probative, and was used improperly to bolster A.J.'s credibility.

Ms. Crites testified that she worked with children who were at risk for being removed from their homes, including those that had been sexually or physically abused. She testified that she had been trained to recognize signs and symptoms of sexual abuse, and that characteristics and symptoms that commonly occur in sexually abused children include depression, anger, problems in school, fears, phobias, bedwetting with younger children, nightmares, guilt or shame, eating disorders, inability to trust, and problems with memory. Ms. Crites said that she first came into contact with A.J. as a result of a referral because of reports of sexual abuse, and continued to see her professionally until A.J. graduated from high school. When asked if she had observed any of the characteristics of a person who had been sexually abused during her contacts with A.J., Ms. Crites answered that she had, and identified them as fears, phobias, depression, somatic complaints, eating problems, inability to trust, and guilt or shame. She admitted on cross-examination, however, that these are not symptoms that are experienced only by children who have been sexually abused.

Dr. Grando is a psychologist whose practice includes evaluating and providing therapy for children and adolescents who have been sexually abused. He testified that there are "characteristics of, that manifest themself [sic] and behavior that manifest themself [sic] by children, adolescents that have been sexually abused." In interviewing someone that may have been sexually abused, he looks for the manner in which they show their emotions, whether they are distressed, if they have difficulty answering questions, indications that they are fearful of someone or a particular situation, nightmares, not getting along with their peers, and whether there are exaggerated or dramatic kinds of changes.

He also looks for feelings of hurting themselves, running away or doing something injurious such as using drugs. He said that those "are specific characteristics that sometimes manifest themselves in—in children or adolescents that have been sexually abused."

Dr. Grando said that he interviewed A.J. four times in April and May 1993, and that he found characteristics that are sometimes manifested by a child that had been sexually abused. In this regard, he said that she cried, rubbed her forehead, showed signs of tension, and talked as if they were "separated." As with Ms. Crites, Dr. Grando said, however, that the characteristics he referred to were not symptoms that are seen only in children who have been sexually abused, and that they may appear "for other reasons."

Defendant relies primarily on *State v. Taylor*, 663 S.W.2d 235 (Mo. banc 1984), in contending that the testimony of Ms. Crites and Dr. Grando was prejudicial and improperly bolstered A.J.'s credibility. In *Taylor*, a psychiatrist who specialized in the diagnosis and treatment of rape victims, testified that the symptoms exhibited by the victim there were consistent with rape trauma syndrome, and that the victim was not fantasizing when she described the rape, that she would not be capable of feigning the symptoms, and that he could visualize no reason by which consensual intercourse would cause such symptoms. *Id.* at 236–37. The *Taylor* court identified the issue in that case as whether evidence that the victim of an alleged rape suffers from rape trauma syndrome is admissible as evidence that intercourse was not consensual. *Id.* at 237. Noting that expert opinion's testimony is not admissible as it relates to credibility of witnesses, the court held that the witness's conclusion that the victim suffered rape trauma syndrome as a result of the rape incident she described goes beyond proper limits of opinion expression. *Id.* at 239–40. The court concluded that:

Under the circumstances of this case, [the psychiatrist] went too far in expressing his opinion that the victim suffered rape trauma syndrome as a consequence of the incident with the defendant at [the location where it was alleged to have occurred]. That conclusion vouches too much for the victim's credibility and supplies verisimilitude for her on the critical issue of whether defendant did rape her. That was not part of [the psychiatrist's] evaluation process. For, indeed, according to [the psychiatrist], trauma syndrome could result from a number of stressful situations, and it would be too presumptuous [sic] for him to designate the particular experience. That was not his proper function.

*Id.* at 240. The *Taylor* court did say, however, that "[p]roperly qualified, an expert in the psychological testing field may testify that the patient, client or victim does possess and exhibit the characteristics consistent with those resulting from a traumatic stress reaction, such as rape." *Id.* Finally, the court said:

Under the qualifications given, the most that [the psychiatrist] could legitimately state would be that the prosecutrix' symptoms were consistent with a traumatic experience—even a stressful sexual experience. But it goes beyond his qualifications to say that she was raped by defendant at Mary's Moonlight Lounge. That is indeed a chasm too wide and deep to leap.

*Id.* at 241.

Since *Taylor*, other cases have been decided in Missouri touching on this subject. *State v. Williams*, 858 S.W.2d 796 (Mo. App. E.D.1993), involved a conviction for sodomy that was reversed based on the testimony of a doctor who said that:

... very rarely do children [sexually abused children] lie about it, especially 8–year olds or 7–year olds. So the most important thing is what the child says, how consistent a statement, the circumstances under which the child said—was

it a spontaneous declaration, were there any leading questions asked, and in this case there were none. The nurse asked her, and she spontaneously, who had sexually abused her. That's important. Well I think that's—that's [sic] declares who it was, and the child is the most apt person to say it, and they don't—they essentially don't lie. Incidents of lying among children is very low, less than three percent. And as I said, the physical findings and the behavioral indicators can only support what the child says....

*Id.* at 800. In reversing the conviction, the court held that this testimony "went beyond admissible testimony concerning general, behavioral characteristics of sexually abused children," "vouch[ed] too much for the victim's credibility," and "included improper quantification of the probability of the complaining witness' [sic] credibility." *Id.* at 801. The rule stated by the court was that expert testimony that comments directly on a particular witness's credibility, as well as expert testimony that expresses an opinion with respect to the credibility or truthfulness of witnesses, invests "scientific cachet" on the central issue of credibility and should not be admitted. *Id.* at 800. "However, it may be appropriate for an expert to testify that a child demonstrates age-inappropriate sexual knowledge or awareness, and that a child's behaviors are consistent with a stressful sexual experience." *Id.* The latter type of testimony was characterized as "general testimony describing behaviors and other characteristics commonly observed in sexually abused victims (often called general 'profile' testimony)," which the trial court has great discretion in admitting. *Id.* at 798–99.

The Missouri Supreme Court has again spoken on the subject in *State v. Silvey,* 894 S.W.2d 662 (Mo. banc 1995). That case involved the testimony of a clinical social worker that the four-year-old victim of sodomy displayed behavioral indicators consistent with sexual abuse. In *Silvey,*

the defendant relied on *Williams* in arguing that the testimony amounted to substantive evidence of his guilt and improperly bolstered the victim's testimony. 894 S.W.2d at 671. The Supreme Court noted the distinction, recognized in *Williams,* between general testimony describing behaviors and other characteristics commonly observed in sexually abused victims ("profile" testimony), and particularized testimony concerning the victim's credibility. *Id.* The Court noted that the witness testified that he had observed several behavioral indicators in the victim that were consistent with sexual abuse, but that he did not offer an opinion as to whether the victim was abused by the defendant in that case. *Id.* Likewise, it noted that the witness did not offer an opinion as to the victim's credibility, or the credibility of abuse victims in general. *Id.* In holding that there was no error in admitting the testimony, the Court said "[t]he only conclusion drawn by [the witness] was that [victim] exhibited several behavioral indicators consistent with a child that has been sexually abused. This conclusion is clearly within the province of allowable expert testimony and did not invade the province of the jury." *Id.*

The testimony about which Defendant complains in this case can be characterized as consistent with that reviewed in *Silvey.* As in *Silvey,* the testimony here was that A.J. exhibited several behavioral indicators consistent with a child that had been sexually abused. The testimony was in the nature of "profile" testimony, approved in *Williams* and *Silvey,* and was not particularized testimony concerning this victim's credibility. This point is denied.

■ Defendant's last point on appeal relates to the refusal of his tendered converse jury instruction. The verdict directing instruction given in this case read:

### INSTRUCTION NO. 5

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the period of time from the 3rd day of December, 1992, through the 25th day of December, 1992, in the County of Taney, State of Missouri, the Defendant put his penis into the mouth of [A.J.], and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that [A.J.] was then less than fourteen years old, and

Fourth, that defendant was not then married to [A.J.], then you will find the defendant guilty of sodomy.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the mouth, tongue, hand, or anus of another person done for the purpose of arousing or gratifying the sexual desire of any person.

If you do find the defendant guilty of sodomy, you will assess and declare one of the following punishments:

1.  Life imprisonment.

2.  Imprisonment for a term fixed by you, but not less than five years.

The converse instruction which the trial court refused (Instruction No. A) read as follows:

If you have a reasonable doubt as to whether:

First, that the incident between the 3rd day of December, 1992, and the 25th day of December, 1992, or

Second, that the incident occurred in the County of Taney, State of Missouri, or

Third, that the defendant placed his penis in the mouth of [A.J.], you must find the defendant not guilty of sodomy as submitted in Instruction No. 5.

When the trial court refused Instruction No. A, Defendant tendered an alternative converse instruction that was given by the court. It read:

### INSTRUCTION NO. 6

If you have a reasonable doubt as to whether on or about the period of time from the 3rd day of December, 1992, through the 25th day of December, 1992, in the County of Taney, State of Missouri, the defendant put his penis in the mouth of [A.J.], you must find the defendant not guilty of sodomy as submitted in Instruction No. 5.

Defendant argues that the failure to give Instruction No. A was error because it did not violate MAI CR3d 308.02 or its Notes on Use, it correctly stated the law, and it presented the converse in the manner most consistent with his defense. He says that there is no rule in MAI–CR3d 308.02 which prevents a defendant from breaking the three separate facts from the first paragraph of Instruction No. 5 into three separate paragraphs, and that although the trial court gave a converse instruction, "it was not the one he wanted." Rather, he says that he wanted to highlight the date, the place, and the conduct in his converse, and he had a right to present his defense in the way he chose.

We note that MAI–CR3d 308.02 instructs to insert the element or elements to be covered in the converse instruction "using the language from the verdict director," and refers the reader to the Notes on Use for examples. Notes on Use 4(B) states that when conversing one paragraph of the verdict director, the material that follows the introductory phrase of the converse, "must be taken from the verdict director." In the instant case, Defendant sought to converse all of the material in paragraph First of Instruction No. 5, but the language contained in Instruction No. A following the introductory phrase did not track that contained in paragraph "First" of the verdict director either in form or content. While there is no contention that the language used by Defendant in constructing Instruction No. A unfairly

characterized the language from Instruction No. 5, the fact remains that the language in Instruction No. A was not "taken from [Instruction No. 5]" as directed by Notes on Use 4(B). Instruction No. 6, however, did utilize the same language, in one paragraph, just as it appeared in paragraph First of Instruction No. 5.

 A defendant is entitled to a converse instruction in proper form if requested. *State v. Mouse*, 989 S.W.2d 185, 191 (Mo.App. S.D.1999). The Notes on Use 2 to MAI–CR 3d 308.02 provide that, subject to limitations not applicable here, a defendant is entitled to a converse instruction in the form of MAI–CR 3d 308.02 "upon written request in proper form by the defendant." Here, Instruction No. A was not in "proper form" in that it was not in strict compliance with MAI–CR 3d 308.02 or its Notes on Use. *See Mouse*, 989 S.W.2d at 191.

Defendant relies on *State v. Smith*, 485 S.W.2d 461, 468 (Mo.App.Spfd.1972), for the proposition that when a defendant in a criminal case formulates and requests an instruction that correctly declares the law which is the converse of the State's principal instruction, it is the duty of the trial court to give it. Unlike the instant case, however, in *Smith*, "[t]he trial court did not give any other instruction which presented this issue conversely or in an affirmative manner from the defendant's point of view, . . ." *Id.*

 Even if Defendant was correct in arguing that Instruction No.A was consistent with and required by MAI CR 3d 308.02 and the Notes on Use, the prejudicial effect of the failure to give the instruction is to be judicially determined. *Mouse*, 989 S.W.2d at 191. In this case we are unable to conclude that Defendant was prejudiced by the failure to give tendered Instruction No. A. Instruction No. 6 was given which precisely conversed the language of paragraph First of Instruction No. 5. Defendant's argument that he was prejudiced by not having the converse in

the form he desired is not persuasive. The jury was, in fact, instructed under a converse that correctly declared the law in the converse of the State's verdict directing instruction. Under the circumstances here, we are unable to conclude that the trial court erred or, if it did, that Defendant was prejudiced. This point is denied.

The judgment is affirmed.

MONTGOMERY, J., and BARNEY, C.J., concur.