THE STATE v. RILEY, *Appellant.*

1. **Pleading, Criminal:** LARCENY: INDICTMENT.  An indictment charging the larceny of the property of two joint owners will not be held defective on motion to quash for failure to set out the Christian name of one of the owners where the name of the other is properly set out.  (R. S. 1879, sec. 1812.)

2. ———: INDICTMENT : VARIANCE.  The motion to quash in such case may be properly overruled under Revised Statutes, 1879, section 1820, which provides that a variance between the statement in the indictment and the proof in the Christian name and surname or both Christian name and surname of any person named in the indictment shall not be grounds for acquittal, unless the court shall find such variance to be material to the merits of the case or prejudicial to the defense of the defendant.

3. **Practice, Criminal**: VARIANCE. Where an offense is committed in relation to property belonging to one or more partners or owners, the indictment will be sufficient if it allege such property to belong to any one or more of the owners without naming all of them.   (R. S. 1879, sec. 1812.)

4. **Criminal Law**: LARCENY FROM DWELLING. Larceny from a dwelling is grand larceny irrespective of the value of the property taken.   (R. S. 1879, sec. 1309.)

5. ———: DRUNKENNESS: INSANITY. Drunkenness is no excuse for the commission of crime and temporary insanity immediately following voluntary intoxication is no defense.  But insanity resulting from long continued habits of intoxication of such character as to deprive the party of the mental capacity to know the right from the wrong is the same in law as insanity arising from other causes, and relieves the party from legal liability.

6. **Practice**: REFUSAL OF INSTRUCTION. An instruction should not be given when there is no evidence upon which to base it.

*Appeal from Buchanan Criminal Court.*—HON. SILAS WOODSON, Judge.

AFFIRMED.

*Woodson & Woodson* for appellant.

(1)   The court should have sustained the motion to quash the indictment.  It was necessary to allege the Christian name and surname of W. E. Brocken or give some reason for not so doing. *Willis v. People*, 1 Scammon (Ill.) 399; Moore's Crim. Law, sec. 160, pp. 217, 881; *Jones v. State*, 11 Ind. 357; Kelley's Crim. Law, secs. 174, 176, 180, 600; *State v. Fay*, 65 Mo. 490; *State v. Horn*, 93 Mo. 190; *State v. Smith*, 31 Mo. 120. (2)  There was a variance between the allegations of the indictment and the evidence.  The indictment charged the larceny to have been committed in the dwelling house of Gibson, and the uncontradicted evidence was that it belonged to Gibson and Brocken.   (3) Defendant might have been convicted of petit larceny only and his third instruction should have been given.

The State v. Riley.

*State v. Clifton*, 73 Mo. 428; R. S. 1879, sec. 1655. (4) Defendant's instruction number 1, upon the question of insanity, should have been given. There was sufficient evidence upon which to base it. *State v. Hundley*, 46 Mo. 414, and cases cited. And the defense of insanity in a criminal case is a question of fact for the jury. *State v. Holmes*, 54 Mo. 153; *State v. Hundley*, 46 Mo. 414; *State v. Redemeir*, 71 Mo. 173.

*John M. Wood*, Attorney General, for the State.

(1) The indictment clearly charges larceny from a dwelling house. It is not bad because of the use of the initials instead of the Christian name of one of the owners of the property. The failure to state such owner's Christian name is not such an error as to prejudice the substantial rights of defendant upon the merits. R. S. 1889, secs. 4114 and 4115; *State v. Baker*, 64 Mo. 282; *State v. Bibb*, 68 Mo. 286; *State v. Mohr*, 68 Mo. 303; *State v. Johnson*, 93 Mo. 73; *State v. Johnson*, 93 Mo. 317. The indictment would have been good if the name of W. E. Brocken had been omitted. R. S. 1889, sec. 4106. (2) It will be presumed that the trial court, in refusing defendant's demurrer to the evidence, found that the variance claimed was immaterial or not prejudicial to the defense; such being the case, this court will not review the action of the trial judge. R. S. 1889, sec. 4114; *State v. Meyers*, 82 Mo. 558, and authorities cited; *State v. Sharp*, 71 Mo. 218. (3) Instruction number 3 in appellant's abstract (which is number 5 in the record) was properly refused, for the reason that there was not a particle of evidence on which to base it. The evidence showed that the gun was stolen by defendant from a dwelling house, and this is grand larceny, irrespective of the value of the property so stolen. There is nothing in the case in the slightest degree indicating that defendant might have stolen the gun from some other place than from the dwelling

house. (4) The evidence on the part of the defendant utterly fails to show any insanity in defendant, and especially so at the time the offense was committed. All it establishes is that defendant was an habitual drunkard, and, inasmuch as drunkenness does not excuse crime, the court did not err in refusing defendant's instruction as to his responsibility for the act on account of drunkenness. *State v. Edwards*, 71 Mo. 312, and authorities cited; *State v. Ramsey*, 82 Mo. 133, and authorities cited.

RAY, C. J.—Defendant was indicted, tried and convicted in the Buchanan county criminal court of the larceny of a shot-gun, from a dwelling house, and his punishment assessed at imprisonment in the penitentiary for three years.

Omitting caption and signature of the prosecuting attorney the indictment in the cause is as follows:

"The grand jurors of the state of Missouri, within and for the body of the county of Buchanan aforesaid, being duly empanelled and sworn, upon their oaths do present that James Riley, on the fifteenth day of May, A. D. 1889, or within a few days next before said fifteenth day of May, at the county of Buchanan and state aforesaid, from the dwelling house of George W. Gibson, one double-barrel shot-gun (a better description is to the grand jurors unknown) of the value of thirty dollars, the joint personal property of George W. Gibson and W. E. Brocken, then and there being found to-wit, in said dwelling house and at said county did feloniously steal, take and carry away, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state."

The evidence in behalf of the state is to the effect that Gibson, who was a man of family, and Brocken, who was single and unmarried, lived together upon a farm in Buchanan county, Missouri, and were partners in managing and working the farm. Having closed up

The State v. Riley.

their house, said Gibson, with his wife and child, anp said Brocken and a hired hand, left early in the morning of May 11, and went to St. Joseph, Missouri, for the day.

The children of Gibson were sent over to their uncle's, in the neighborhood, so that no one was left at the house on said day. The doors of the house were shut, but not locked. At a point called Frazier, on their way to St. Joe, and two or three miles from their farm, they met defendant, who asked Brocken if they were going to town, and was told that they were. Upon their return, at about eight o'clock that same evening, they found that a shot-gun, which had been left in a gun-rack over a door in the interior of the house, was missing. Between two and three o'clock in the afternoon of the same day one Henry Cook and two others met defendant on the road some three or four miles from the place of the larceny, carrying the gun in question, which defendant represented he had taken in part payment for labor, from a man at or near Plattsburg, Missouri, and, after some parley and negotiation, the defendant sold the gun to said Cook for six dollars. The value of the gun was, it may be remarked, variously estimated at from twenty to thirty dollars. This evidence was not disputed or controverted.

It is practically conceded that defendant took the gun, and the only evidence in defendant's behalf was offered to show that he was not responsible for the crime, because of his mental condition due to continued and excessive intemperance. We will recur to this branch of the evidence later on in the course of this opinion.

The summary of the evidence already given will, we think, suffice for a correct apprehension of its general character and bearings, and we will now proceed to a consideration of the points now urged for a reversal of the judgment of conviction. First, then, there was a

motion to quash the indictment because the indictment did not set out the Christian name of W. E. Brocken, who was one of the owners of the stolen gun. This motion was, we think, properly overruled by the court. R. S. 1879, secs. 1812 and 1820.

Again it is contended that there is a fatal variance between the indictment and proof, inasmuch as the indictment charged the larceny to have been committed in the dwelling house of Gibson, whereas the evidence shows the house was held in partnership by Gibson and Brocken. This state of facts is expressly provided for in section 1812, Revised Statutes, 1879, which provides that where any offense shall be committed upon or in relation to any property, belonging to several partners or owners, the indictment shall be deemed sufficient if it allege such ' property to belong to any one or more of such partners or owners without naming all of them.

Complaint is also made of the refusal to give instruction number 3, asked by defendant. The gist of this instruction, so far as the objection thereto now urged is concerned, is that it authorizes the jury to find. defendant guilty of petit larceny, if they found the value of the gun to be less than thirty dollars. The gun was, as the evidence shows, and the indictment charges, taken and stolen from a dwelling house, and this is grand larceny, irrespective of the value. The value was, therefore, immaterial, and the instruction properly refused on this account if no other. R. S. 1879, sec. 1309; *State v. Ramelsburg*, 30 Mo. 26; *State v. Smith*, 30 Mo. 114.

Defendant also asked the following, upon the refusal of which error is predicated: "1. The court instructs the jury that if they believe, from all the evidence, facts and circumstances in this case, that the defendant, from a long and continued use of whiskey and alcoholic liquors, or either of them, had brought upon himself *delirium tremens*, and weakened and

impaired his mind so that he did not have mind enough, at the time of the alleged offense, to know the right from wrong in taking the gun alleged to have been taken, and that he took said gun while he was suffering by such use of alcoholic liquors for the purpose of obtaining liquors to drink, then they must acquit the defendant in this case.''

We see no special reason to criticise the form and phraseology or doctrine set forth in the instruction just quoted. Whilst drunkenness is no defense, and does not mitigate the offense, and whilst temporary insanity immediately resulting from voluntary intoxication, does not discharge any one of his responsibility, on the other hand long continued habits of intemperance producing permanent mental disease amounting to insanity, or as the instruction says so weakened and impaired the mind that one committing an offense has not mind enough at the time to know right from wrong, relieves the party, we apprehend, of responsibility under the law. Insanity of this sort, and thus produced, is the same in law as insanity arising from other causes. *State v. Hundley*, 46 Mo. 414 and cases cited. But the instruction was refused, we apprehend, upon the ground that it was not supported by any evidence in the cause.

Defendant, then twenty-four years old, had for several years used intoxicating liquors to excess. He seems to have contracted this unfortunate habit when a lad only seventeen years of age. He would work, it seems, for several days, get his pay and go off, and get drunk and stay drunk for several days at a time, or as long as he could get liquor. He would get a jug or jugs of whiskey and lay in the woods or horse lot, and these sprees happened sometimes as often as three or four times a month. He had *delirium tremens* a number of times. The father and a brother say twice some seven or eight years before, and once about a year before the date of the larceny. The mother says he had *delirium*

*tremens* seven or eight times, the last time in December about five or six months previous to the larceny. The defendant himself says in his testimony that the last attack was in February. Without going into all the details, the evidence, we think, shows a gross and uncontrolled appetite or thirst for strong drink, and some of it tends to show that when recovering from his sprees, which were some times protracted for several days, he was dull, nervous and shaky, and did not seem to be at himself exactly. But there is nothing in it to show that defendant was insane, or suffering from any permanent mental disease arising from excessive use of liquor or narcotics or otherwise, or that his mind was so weakened or impaired from any cause that he did not know right from wrong.

The trial court of its own motion, as well as the state's attorney, questioned the witnesses introduced by defendant directly as to his mental condition, and the general purport of the testimony is, that when not drinking, no one ever noticed any strange action on his part or anything out of the common. He was, it seems, at all intermediate times, a man of good enough ordinary sense, was thought a good workman, and to know generally what he was about. There is, we believe, no evidence that he was drunk on Saturday when the larceny was committed. The mother of defendant testifies that he was drunk on the Thursday before Saturday, the eleventh, the date of the larceny, and that she heard he was drunk on Friday, but did not see him that day or until the Monday following, when she testifies he came home, and did not seem to be right, but stupid and not at himself. The three witnesses name Cook who bought the gun, as before stated, testified that he was sober at the time of the purchase, that is in the afternoon of the day the larceny was committed. We have looked through the evidence in the record pretty carefully in this connection and see no prejudice to the

rights of the defendant in the matter of refusing the above instruction which, we think, was without evidence to support it.

Our attention is also called to a further exception of this sort. Defendant's counsel inquired of the prosecuting witness, touching his knowledge of defendant's habits in respect to sobriety, and the state's objection thereto was sustained. Even if the ruling in this behalf was erroneous, and we do not think it was, defendant was not thereby prejudiced as to his substantial rights, inasmuch as he was afterwards allowed to fully interrogate the witness on that subject. The witness, moreover, knew little or nothing about the matters. The trial court permitted the examination to take a wide range on this branch of the case, treating defendant liberally in this regard, so that we think he has in this respect no just ground of complaint.

This leads to an affirmance of the judgment of the trial court, and it is accordingly so ordered. All concur.