**Nicholas MOUSE, Movant–Appellant,**

v.

**STATE of Missouri, Respondent– Respondent.**

**No. 24700.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 4, 2002.

Petition for Rehearing and Transfer Denied
Oct. 25, 2002.

Application for Transfer Denied
Dec. 24, 2002.

James R. Wyrsch, Charles M. Rogers, David A. Kelly, Wyrsch, Hobbs & Mirakian, P.C., Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie Morrell, Asst. Atty. Gen., Jefferson City, for respondent.

JAMES K. PREWITT, Presiding Judge.

Nicholas Mouse ("Movant") appeals the denial of his Rule 29.15 motion following an evidentiary hearing on the matter. Movant was charged by information with the class A felony of assault in the first degree, § 565.050, RSMo Supp.1995. His first trial resulted in a mistrial.

At the second jury trial, the State filed, and the trial court sustained, a motion in limine to exclude expert testimony regarding Movant's alleged substance-induced psychosis, which Movant attempted to introduce to ameliorate the required *mens rea* for the crime of assault. Movant presented an offer of proof in the form of an excerpt from the transcript of the offer of proof from the first trial, where Dr. Tim McCarty, a psychologist, testified that Movant suffered from a "mental disease of substance[-]induced psychotic disorder [that] prevented [Movant] from knowing and appreciating the nature, quality and wrongfulness of his conduct" and prevent-

ed Movant "from acting with a conscious object to kill or cause physical injury." The trial court rejected Movant's offer of proof.

As determined on the direct appeal, the evidence at trial showed that Movant voluntarily induced amphetamines prior to the commission of the assault. *See State v. Mouse*, 989 S.W.2d 185, 189 (Mo.App. 1999). There was also sufficient evidence presented through which the jury could have determined that, during the commission of the crime, Movant was in an intoxicated condition from alcohol. *Id.*

Movant was convicted and sentenced to thirty years' imprisonment, and the conviction and sentence were affirmed on direct appeal. *Id.* at 192. Thereafter, Movant filed an Amended Motion to Vacate, Set Aside or Correct the Judgment or Sentence, alleging ineffective assistance of counsel. The motion was denied. This appeal followed.

Movant presents three points relied on, all relating to claims of ineffective assistance of counsel. Appellate review of the denial of a post-conviction motion is limited to the determination of whether the findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). To prevail on a claim of ineffective assistance of counsel, Movant must show that counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and that Movant was prejudiced as a result thereof. *Sneed v. State*, 756 S.W.2d 618, 618 (Mo. App.1988). Movant "must overcome the strong presumption that counsel made all significant decisions in the exercise of his [or her] reasonable professional judgment." *Robinson v. State*, 752 S.W.2d 373, 374 (Mo.App.1988).

In our review, we need not consider both the performance and prejudice prong, if we find that Movant failed on one of them.

*Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). It is also not necessary to consider the performance prong first and then prejudice; if the claim may be resolved based on lack of prejudice, we may stop our review there. *Id.*

■ In his first point, Movant contends that counsel was ineffective because he did not cite *State v. Shipman*, 568 S.W.2d 947 (Mo.App.1978), to the trial and appellate courts. Movant argues that *Shipman* would have supported the attempt at trial to include expert testimony showing Movant lacked the requisite mental intent to commit the crime because of a substance-induced psychosis. Movant maintains that the failure of counsel to cite *Shipman* prejudiced him because counsel was thereby unable to effectively argue Movant's position before the trial and appellate courts.

In support of his point, Movant asserts that *Shipman* recognized that chronic substance abuse can lead to an independent psychosis that can be relied upon as a mental defense for the crime charged. Movant is correct that the *Shipman* court stated, "If a psychosis exists by reason of defendant's inability to tell right from wrong or inability to know or appreciate the nature, quality or wrongfulness of his conduct or incapacity to conform his conduct to the requirements of law ..., how or why the mental disease or defect arose should be of no moment." *Id.* at 951.

The discussion in *Shipman* is based on § 552.010, which defines "mental disease or defect" in the same manner today as it did in 1978, when *Shipman* was decided.

The terms **"mental disease or defect"** include congenital and traumatic mental conditions as well as disease. They do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, whether or not such abnormality may be included

under mental illness, mental disease or defect in some classifications of mental abnormality or disorder. The terms **"mental disease or defect"** do not include alcoholism without psychosis or drug abuse without psychosis . . . .

Another statute of interest in this appeal is § 562.076, which is quite different today than it was at the time of *Shipman.* Section 562.076, RSMo 1978, is set forth below:

1. A person who is in an intoxicated or drugged condition whether from alcohol, drugs or other substance, is criminally responsible for conduct unless such condition

(1) Negatives the existence of the mental states of purpose or knowledge when such mental states are elements of the offense charged or of an included offense; **or**

(2) Is involuntarily produced and deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct or to conform his conduct to the requirements of law.

2. The defendant shall have the burden of injecting the issue of intoxicated or drugged condition.

Presently, § 562.076 provides as follows:

1. A person who is in an intoxicated or drugged condition, whether from alcohol, drugs or other substance, is criminally responsible for conduct unless such condition is involuntarily produced **and** deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct.

2. The defendant shall have the burden of injecting the issue of intoxicated or drugged condition.

**3. Evidence that a person was in a voluntarily intoxicated or drugged condition may be admissible when otherwise relevant on issues of con-** **duct but in no event shall it be admissible for the purpose of negating a mental state which is an element of the offense. In a trial by jury, the jury shall be so instructed when evidence that a person as in a voluntarily intoxicated or drugged condition has been received into evidence.**

Revisions between the two are indicated in bold print.

*Shipman* did not address § 562.076, under which defendant might have been able to use voluntary intoxication as a defense had it negated the requisite mental state of the crime of which he was accused. However, from the testimony and evidence that can be gleaned from the opinion, it does not appear that Shipman was intoxicated at the time of the attempted burglary. *Id.* at 947–48.

The focus of the appeal in *Shipman* was the testimony defendant attempted to elicit from his mother that, according to defendant, would have shown that his drug abuse had resulted in psychosis. *Id.* at 951. The court rejected defendant's argument and determined that the trial court had not abused its discretion in excluding the mother's testimony because her opinion would have simply recast "defendant's unconventional conduct when he was under the influence of drugs," which would not have "warrant[ed] a lay conclusion that defendant's drug abuse had resulted in psychosis." *Id.* at 951. The court further determined that defendant's mother had, at best, limited experience in such diagnosis, and would not have qualified as an expert in determining mental capacity related to criminal responsibility. *Id.*

Prior to reaching the above holding in the case, the *Shipman* court presents a lengthy discussion analyzing § 552.010 in which it makes several statements to which Movant attaches significance. The court states that the statute is written to

make "psychosis the determinative factor in deciding whether drug abuse is a defense vel non." *Id.* at 950. It focuses the discussion on the premise that determining a defendant's legal responsibility is based on "whether the defendant, at the time of the crime and as the result of drug-induced psychosis, did not know or appreciate the nature, quality or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of law." *Id.* It concludes the analysis by stating:

> While it must be recognized that drug addiction without psychosis is not a defense [citations omitted], a mental disease or defect which results in insanity or the inability to distinguish right from wrong is still a defense although the disease or defect had its origin and was nurtured into legal irresponsibility through drug abuse or addiction. Stated differently: If a psychosis exists by reason of defendant's inability to tell right from wrong or inability to know or appreciate the nature, quality or wrongfulness of his conduct or incapacity to conform his conduct to the requirements of law (§ 552.030), how or why the mental disease or defect arose should be of no moment.

*Id.*

We do not necessarily disagree with the language as stated in *Shipman*. However, there are two distinctions that are important to the case at bar, which show why Movant fails on the ineffective assistance of counsel claim made in this point.

First, the issue before the *Shipman* court was whether the trial court abused its discretion by excluding the testimony of defendant's mother. The analysis related to § 552.010 and the statements made by the court regarding drug-induced psychosis were not essential to the court's decision on that issue. Therefore, the portion of the opinion to which Movant directs our attention is dicta. *See Campbell v. Labor & Indus. Relations Comm'n,* 907 S.W.2d 246, 251 (Mo.App.1995).

Second, the facts of *Shipman* are distinguishable because, within that case, there was no evidence that defendant was intoxicated, voluntarily or unvoluntarily, at the time of the commission of the crime. *Shipman,* 568 S.W.2d at 947–48. There was only an attempt by defendant to show that prior drug use had led to a psychosis, and that defendant's actions during the time of the commission of the crime were influenced by that psychosis. *Id.* at 950.

Here, the evidence was that Movant had voluntarily ingested amphetamines and alcohol prior to the commission of the crime and was intoxicated at the time of the commission of the crime. *See Mouse,* 989 S.W.2d at 189. Cases other than *Shipman* are more directly on point and state the law necessary to analyze the issue.

■ As noted above, § 562.076 defines how intoxication or a drugged condition affects criminal liability and, since 1984 when the statute was changed, has provided that evidence of voluntary intoxication is not admissible to negate the mental state of an offense. *State v. Goodwin,* 43 S.W.3d 805, 816 (Mo.banc 2001); *see also State v. Elam,* 779 S.W.2d 716, 717 (Mo. App.1989). Nor can voluntary intoxication "provide an insanity defense absent a separate mental disease that results in diminished capacity without the voluntarily ingested drugs." *State v. Rhodes,* 988 S.W.2d 521, 526 (Mo.banc 1999). "Missouri [law] provides that a person is criminally liable if the state proves all the necessary elements of the crime beyond a reasonable doubt *despite* intoxication. Missouri has defined all of its criminal offenses so as to render voluntary intoxication legally irrelevant." *State v. Fanning,* 939 S.W.2d 941, 947 (Mo.App.1997).

Here, Movant relies on § 552.010, which he states, "allows for the mental defect defense based upon substance-induced independent psychosis." The *Elam* court addressed the issue and, through analysis of the current versions of §§ 552.010 and 562.076, determined that "[i]ngestion of a drug, or alcohol, because of an addiction, or compulsion, is not done involuntarily as that word is used in the statute [§ 562.076]." *Elam*, 779 S.W.2d at 717. Therefore, the court concluded that "[d]efendant's testimony that he ingested the PCP voluntarily prevent[ed] his assertion of a defense based on mental disease or defect resulting from the drug." *Id.*

The holding as stated in *Elam* was reiterated in a later case in which the appellate court affirmed the trial court's exclusion of two witnesses whose testimony allegedly would have shown that defendant's prior alcohol use affected his ability to deliberate during the commission of a murder. *State v. Woltering*, 810 S.W.2d 584, 587–88 (Mo.App.1991). In *Woltering*, a case where there was evidence that defendant was intoxicated at the time of the commission of the crime, the court determined that defendant could not assert a defense of mental disease or defect and that "the exclusion of this testimony was proper because Missouri law precludes a defense of voluntary intoxication." *Id.*

In *State v. McGreevey*, 832 S.W.2d 929 (Mo.App.1992), defendant maintained that he suffered from a mental defect at the time of the crime "which was essentially drug abuse *with* psychosis and hence within the purview of a mental disease or defect, per § 552.010." *McGreevey*, 832 S.W.2d at 931. The trial court excluded testimony from a psychologist who was prepared to testify that the defendant suffered from " 'an idiosyncratic intoxication reaction to cocaine use,' or a 'cocaine in-

duced delirium or dementia[,]' " which defendant maintained was a "psychosis." *Id.* The court stated:

It is true that Missouri at one time allowed a defendant to use voluntary intoxication/drug use as a defense if it negatived the mental state necessary for the crime (§ 562.076.1(1), RSMo 1978; effective January 1, 1979, repealed October 1, 1984).

■ However, there is no current support for this position.

. . . .

As settled by … *Woltering* … and … *Elam* …, § 562.076.1 brings Missouri back to the common law rule that *voluntary* intoxication is no defense to a criminal charge.

*Id.*

On Movant's direct appeal, this court concluded consistent with the *Woltering, Elam,* and *McGreevey* line of cases, "there was no support for the proposition that a drug-induced psychosis constituted a mental disease or defect within the purview of § 552.010." *Mouse*, 989 S.W.2d at 188–89. Given the facts of the case here and the current state of Missouri law, the conclusion reached on direct appeal was correct and citing *Shipman* as authority before either the trial court or the appellate court would not have aided Movant. Therefore, counsel was not ineffective for failing to cite the case. Point I is denied.

■ Movant's second point asserts that trial counsel was ineffective in failing to move to suppress the incriminating statement Movant made to a deputy sheriff, as Movant "did not knowingly, voluntarily and intelligently waive his rights … because he was suffering from substance-induced psychosis that prevented him from being capable of effectively waiving his rights to remain silent and to representation." Thus, Movant contends, trial coun-

sel was ineffective in failing to move to suppress the statement and, as a result, Movant was prejudiced.

Movant attempts to bolster this contention by pointing out that trial counsel knew going into the second trial that expert testimony regarding Movant's alleged psychotic state would not be admitted, as the State had filed a pre-trial motion in limine to exclude expert testimony relating to Movant's alleged drug-induced psychosis. Therefore, counsel's testimony that Movant's statement would make Movant appear irrational and would, as a result, aid the defense theory (that he lacked the requisite mental capacity to commit the assault) was not consistent and was unreasonable trial strategy. Movant asserts, "trial counsel's trial strategy effectively worked to admit his client's culpability without any real defense."

"[T]he inquiry on the voluntariness of a statement extends only to determining if a statement was elicited by coercive police tactics." *State v. Blackman,* 875 S.W.2d 122, 134 (Mo.App.1994). "A statement which is induced by psychosis or a mental disease which destroys a defendant's volition and makes him confess is not involuntary within the meaning of the due process clause." *Id.* "The test for voluntariness of a statement is whether, under the totality of the circumstances, the defendant was deprived of the free choice to admit, deny or refuse to answer questions and whether physical or psychological coercion was of such a degree that defendant's will was overborne." *Id.* at 135.

Movant's counsel testified at the evidentiary hearing that 1) because Movant knew the victim, "suppressing his statement from the standpoint of an actual innocence approach ... wouldn't have been very effective" and 2) counsel anticipated having Appellant testify and suppressing the statement would not have aided Movant,

as his was an affirmative defense of mental disease or defect. Counsel stated, "I thought it enhanced ... our position.... [I]t was one of those things where I weighed and balanced it and felt that overall the things to be gained from the statement outweighed the negative aspect of the statement, in terms of our strategy."

"Strategic choices made after a thorough investigation of the law and the facts which are relevant to plausible options are virtually unchallengeable." *Robinson,* 752 S.W.2d at 374. We find that a strategic decision was made after a thorough consideration of the plausible options available in conducting Movant's defense. Point II is denied.

Movant's third point states:

The motion court clearly erred in failing to sustain [Movant's] request for relief on his 29.15 motion in that [Movant] alleged that his trial counsel was ineffective in failing to object and keep from entering into evidence at trial testimony concerning [Movant's] alleged prior abuse of his wife which was inadmissible character impeachment that prejudiced [Movant] before the jury on the unrelated assault in issue at trial, all in violation of [Movant's] rights to due process, a fair trial and the right to effective counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

■ Movant claims that "because the question of [Movant's] intent was really the only issue in question before [the] jury, ... this evidence of potential marital discord and violence may well have tipped the scale before the jury on the question of [Movant's] intent."

Movant's post-conviction motion contains no such claim. The Amended Motion to Vacate, Set Aside or Correct the Judgment or Sentence references testimony

elicited by the State from Movant's wife during the first trial, which resulted in a mistrial. However, no such testimony was received in Movant's second trial. Any reference in the second trial to Movant's alleged prior abuse of his wife came from Movant himself when Movant's trial counsel elicited from Movant the fact that Movant's wife had at one time obtained a restraining order against Movant.

This exchange is not referenced in Movant's post-conviction motion from which this appeal is brought. There, Movant complained of testimony elicited by the State from his wife concerning "Movant's prior acts of violence towards his wife, and the restraining order obtained by Movant's wife against Movant." Claims not properly "raised in the post-conviction motion or tried by implicit consent of the parties at the time of the evidentiary hearing cannot be reviewed for the first time on appeal." *Young v. State*, 770 S.W.2d 243, 245 (Mo. banc 1989). Point III is denied.

The judgment is affirmed.

RAHMEYER, C.J., concurs.

ALMON H. MAUS, Sr.J., dissents in separate opinion.

ALMON H. MAUS, Senior Judge, dissenting.

I respectfully dissent. In my opinion, counsel for Appellant by not citing *State v. Shipman*, 568 S.W.2d 947 (Mo.App.1978), rendered ineffective assistance of counsel entitling the Appellant to relief under Rule 29.15. It was Appellant's counsel's decision to rely upon the defense of mental disease or defect. This reliance was well founded, considering the absolutely bizarre and irrational conduct of the defendant and the unexplained absence of any motive for the Appellant's assault upon his friend. That decision was confirmed by the examination and opinion of psychologist Dr. Tim McCarty. The capstone of that strategy was to be the testimony of Dr. McCarty.

In responding to the charge of assault in the first degree, § 565.050, RSMo Supp. 1995, the Appellant entered a plea of not guilty by reason of mental disease or defect. At the trial at which Appellant was convicted, the court sustained the State's motion in limine to prohibit the introduction of any evidence of voluntary intoxication or voluntary drug use upon the Appellant's state of mind.

Nonetheless, Appellant made an offer of proof of the testimony of Dr. Tim McCarty, a psychologist, whose qualifications to testify concerning substance abuse and mental diseases and defects were established in that offer. Dr. McCarty treated and examined the Appellant. It was the doctor's opinion that, disregarding any history of Appellant's use of alcohol or drugs, based upon the Appellant's behavior preceding, at the time of, and after the attack, the Appellant was psychotic. The doctor explained that psychotic disorders include schizophrenia, schizophrenia paranoia and catatonic. That such disorders can result from genetic or hereditary components, a chemical disorder in the brain and traumatic events in life and substance abuse. He distinguished between a substance induced psychotic disorder and a substance related disorder or an intoxicated state. In essence it was his opinion at the time of the assault Appellant was suffering from a substance-induced psychotic disorder as opposed to substance intoxication at the time of the assault. In other words, the Appellant was suffering from an underlying mental disease or defect which existed independently from any degree of intoxication resulting from the recent ingestion of alcohol or drugs. That as a result of the substance-induced psychotic disorder that at the time of the assault Mouse was not capable of knowing and appreciating

the nature, quality or wrongfulness of his conduct. The offer of proof was refused upon the basis of the motion in limine.

Section 562.086, RSMo provides:

1. A person is not responsible for criminal conduct if at the time such conduct as a result of mental disease or defect he was incapable of knowing and appreciating the nature, quality or wrongfulness of his conduct.

2. The procedures for the defense of lack of responsibility because of mental disease or defect are governed by the provisions of Chapter 552.

Mental disease or defect is defined by § 552.010, quoted in the majority opinion. The critical provision is "(t)he terms mental disease or defect do not include alcoholism without psychosis or drug abuse without psychosis...." That section restates the long-standing law in Missouri that voluntary intoxication, without psychosis, does not relieve a defendant from responsibility.

The revision of the Criminal Code in 1979 included the version of § 562.076 first quoted in the majority opinion. This version provided for the defense of voluntary intoxication to negative the culpable mental state of "purposely" or "knowingly." *See* § 562.016. The result was that voluntary intoxication was a basis for diminished capacity. This result, which changed the long-established law in Missouri, was of short duration. In 1983, the version of § 562.076, next quoted in the majority opinion, was adopted. The later version not only reinstated the principle of responsibility, but mandated that when there is evidence a defendant has been using alcohol or drugs the jury shall be instructed that voluntary intoxication cannot negate a mental state. The history of the relevant statute is traced in *State v. Erwin,* 848 S.W.2d 476 (Mo.banc 1993).

Nonetheless, the definition of mental disease or defect remained unaltered. Section 552.010 yet provides "(the) terms mental disease or defect do not include alcoholism without psychosis or drug abuse without psychosis...." That definition was construed and the fundamental principle of the relationship between psychosis and intoxication has been succinctly stated.

'Psychosis' and 'insanity' are synonymous ... and 'insanity' is to be equated to the incapacity of distinguishing right from wrong. The right-wrong insanity text attributed to M'Naghten case ... has been applied to defenses of drug addiction in like manner as applied to insanity resulting from other causes. While it must be recognized that a drug addiction without psychosis is not a defense ..., a mental disease or defect which results in insanity or the inability to distinguish right from wrong is still a defense although the disease or defect had its origin and was nurtured into legal irresponsibility through drug abuse or addiction. Stated differently: If a psychosis exists by reason of defendant's inability to tell right from wrong or inability to know or appreciate the nature, quality or wrongfulness of his conduct or incapacity to conform his conduct to the requirements of law (§ 552.030), how or why the mental disease or defect arose should be of no moment. (citations omitted)

*Shipman,* 568 S.W.2d at 950.

This fundamental principle was the foundation for the admission of the evidence of the examination by Dr. Tim McCarty and his opinion that Appellant at the time of the assault, because of his psychosis, was not capable of knowing and appreciating the nature, quality, or wrongfulness of his conduct. This testimony was essential to the defense offered by counsel for Appellant. Yet, counsel did not cite to the trial

court the most prominent and clear statement of that fundamental principle, *Shipman, supra.*

This statement in *Shipman, supra,* was and is good law. It is supported by the authorities cited in that opinion.[1] It is the foundation of the instruction on mental disease or defect. *See* MAI–CR3d 306.02A and MAI–CR3d 333.00. *See also State v. Smith,* 649 S.W.2d 417, 431 (Mo.banc 1983).

The fundamental principle stated in *Shipman* was recognized with approval in *State v. Ingram,* 607 S.W.2d 438, 441 (Mo. 1980).

> There was no evidence presented which indicates, or from which an inference could be drawn, that appellant was psychotic, or that he could have been suffering from a mental disease or defect excluding responsibility within the meaning of § 552.010. Therefore, the court properly denied the untimely attempt to interpose the defense. *See State v. Sears, supra.*[2]

The fundamental principle of *Shipman* has been restated by the Supreme Court. "Merely being in a state of drug or alcohol intoxication does not provide a recognizable defense under the law *unless it has resulted in psychosis. State v. Ingram,* 607 S.W.2d 438, 441 (Mo.1980); *State v.*

*Shipman,* 568 S.W.2d at 950." *State v. Preston,* 673 S.W.2d 1, 8 (Mo.banc 1984) (emphasis added).

This fundamental principle of *Shipman* was subsequently restated: "Certainly, merely being intoxicated as a result of alcohol or drug use does not provide a defense under the law unless it has resulted in psychosis." *State v. Williams,* 812 S.W.2d 518, 520 (Mo.App.1991).

The fundamental principle stated in *Shipman* is the basis of the Supreme Court's disapproval of an instruction patterned after MAI–CR3d 310.50, which read, "You are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct." This essentially is the holding of *State v. Mouse,* 989 S.W.2d 185 (Mo.App.1999). That instruction was condemned in the following language:

> We turn now to the instruction, MAI–CR3d 310.50. The instruction is not a misstatement of law. However, the same may be said of the instruction in *Sandstrom, supra.*[3] The critical question is whether a reasonable likelihood exists that the jury understands the instruction to relieve the state of its burden of proof as to a statutory element. The instruction here creates a reasonable likelihood that the jury would be-

---

**1.** "While drunkenness is no defense, and does not mitigate the offense, and while temporary insanity immediately resulting from voluntary intoxication does not discharge any one of his responsibility, on the other hand, long continued habits of intemperance, producing permanent mental disease amounting to insanity, or, as the instruction says, so weakened and impaired the mind that one committing an offense has not enough mind at the time to know right from wrong, relieves the party, we apprehend, of responsibility under the law. Insanity of this sort, and thus produced, is the same in law as insanity arising from other causes." *State v. Riley,* 100 Mo. 493, 13 S.W. 1063, 1064 (1890).

"If the defendant was insane at the time of firing the fatal shot which resulted in the death of the deceased, and was unable to distinguish between right and wrong in the commission of the act which resulted in death, then it can make no difference as to how or in what manner his insane condition was produced." *State v. Porter,* 213 Mo. 43, 111 S.W. 529, 531 (1908).

**2.** *State v. Sears,* 501 S.W.2d 491 (Mo.App. 1973).

**3.** *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

lieve that if defendant was intoxicated, *he was criminally responsible regardless of his state of mind.* That reading has the effect of excusing the state from proving the defendant's mental condition beyond a reasonable doubt and violates due process under *Sandstrom.*

*Erwin,* 848 S.W.2d at 483 (emphasis added).

On the direct appeal of Appellant's conviction, his counsel, by point I of his brief, asserted that the Appellant "should have been permitted to present expert testimony to show he suffered from a mental disease or defect that prevented him from knowing and appreciating the nature, quality and wrongfulness of his conduct at the time of the offense." Counsel did not cite *Shipman, supra,* to this court. In affirming Appellant's conviction, this court noted his argument that "the italicized part of the statute implicitly states that alcoholism with psychosis or drug abuse with psychosis is a mental disease or defect." The court concluded "(t)hat argument, however, was rejected in *State v. McGreevey,* 832 S.W.2d 929 (Mo.App.1992)." *Mouse,* 989 S.W.2d 185, 189 (Mo.App.1999). The issue of what may be a mental disease or defect was not decided by *McGreevey.* In that case, the rejection of the proffered testimony of a psychologist was affirmed upon the following basis:

> It is true that Missouri at one time allowed a defendant to use voluntary intoxication/drug use as a defense if it negatived the mental state necessary for the crime (§ 562.076.1(1), RSMo 1978; effective January 1, 1979, repealed October 1, 1984).

> However, there is no current support for this position. Section 562.076.1, RSMo 1986, effective before the date of the incident, states:

>> A person who is in an intoxicated or drugged condition whether from alcohol, drugs or other substance, is criminally responsible for conduct unless such condition is involuntarily produced and deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct.

> As settled by the cases of *State v. Woltering,* 810 S.W.2d 584, 587–588 (Mo. App.1991), and *State v. Elam,* 779 S.W.2d 716, 717 (Mo.App.1989), § 562.076.1 brings Missouri back to the common law rule that voluntary intoxication is no defense to a criminal charge. There is no showing in the record that Dr. Mandracchia could testify that McGreevey's drugged and demented condition deprived McGreevey of the appreciation of the nature of his conduct
> . . . .

*McGreevey,* 832 S.W.2d at 931.

*McGreevey* and the cases that opinion relies upon are inapposite to the argument of movant and the fundamental principle stated in *Shipman.* That is emphasized by the following excerpts from those cases:

> After closing arguments the court stated that it would not have instructed a jury on the defense of mental disease or defect had the case been tried to a jury. The court observed, '[T]here was no testimony that the defendant was in a psychotic state prior to the ingestion of the drug on the day in question' and concluded,

>> I have come to the conclusion that the psychosis had to exist prior to the ingestion in order to qualify under the law that says if you've got alcohol plus a psychosis you can submit it.

*Elam,* 779 S.W.2d at 717.

> As discussed in Point I, no medical evidence was introduced which indicated defendant suffered from a mental disease or defect. Defendant thus cannot assert a defense of incapacity to form a

specific intent.... the exclusion of this testimony [of alcohol abuse] was proper because Missouri law precludes a defense of voluntary intoxication. § 562.0076 RSMo 1986.

*Woltering*, 810 S.W.2d at 587–88.

The proffered testimony of Dr. McCarty was that the psychosis of Mouse, while the result of substance abuse, predated the ingestion of drugs or alcohol at the time in question. This was the evidence missing in *Woltering* and *Elam*.

"Appellate review of a motion court's disposition of a Rule 29.15 motion is limited to a 'determination of whether the findings and conclusions of the [motion] court are clearly erroneous.' Rule 29.15k." *Kuhlenberg v. State*, 54 S.W.3d 705, 707 (Mo. App.2001). "A motion court's findings and conclusions are clearly erroneous only if the reviewing court firmly believes a mistake was made after it has reviewed the entire record." *Id.* "To prevail on a claim of ineffective assistance of counsel, the movant must be able to show that 'counsel's performance was deficient and that this deficient performance prejudiced the movant.'" *Id.*

The essence of the findings and conclusions which formed the basis of the motion court's denial of Appellant's motion is as follows:

> Movant's position is based on an erroneous assumption; to wit that his attorney should have been able to convince the court the law as declared by the applicable cases is erroneous. In support of his position he called Delaney Dean, a psychologist and an attorney, along with William Flieschaker, movant's counsel at the time of trial and on appeal. Dean testified, as would Dr. McCarty if allowed to testify at trial, that movant suffered from a psychosis voluntarily induced by methamphetamine use, and that the statute 552.101,

R.S.Mo. required his exoneration because he suffered from a mental disease or defect and, therefore did not have the necessary intent to commit the crime. She [Dr. Dean at the Motion 29.15 hearing] relied upon Shipman, supra, despite the fact it is not the law in this state. Counsel for movant, William Flieschaker, testified he did not cite the case to the court, but explained the case was not controlling authority at the time, or today.

The findings and conclusions of the motion court are clearly erroneous. The finding that Flieschaker "explained the case [*Shipman*] was not controlling authority at the time, or today" is factually wrong. At the motion hearing, Flieschaker distinguished *McGreevey* and stated that *Shipman* would have been appropriately cited to the trial and appellate courts, although he did not do so.

Contrary to the finding of the motion court, the fundamental principle of *Shipman* is good law. As stated above, it has been followed by the cases and is incorporated in the criminal instructions. The state has cited no authority *Shipman* does not correctly state the law and independent research reveals none.

As stated, it was the strategy of counsel to establish Appellant was not guilty by reason of mental disease or defect. There was evidence of the utterly bizarre conduct of Appellant before, at the time of and after the assault upon his friend. There was no motive for that attack. The admission of the testimony of Dr. McCarty was essential to that defense. The clearest authority for the admissibility of that testimony is *Shipman*. Yet counsel did not cite that case to the trial court or to the appellate court.

"To prevail on an ineffective assistance of counsel claim, a movant must 'show that

counsel's representation fell below an objective standard of reasonableness.'" *Moss v. State,* 10 S.W.3d 508, 511 (Mo.banc 2000) (quoting *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Lyons v. State,* 39 S.W.3d 32,39 (Mo.banc 2001).

*Shipman* and the fundamental principle stated therein are cited under § 552.010, RSMo and the appropriate headings in the Missouri Digest. This authority could have been found with reasonable research. If that authority had been cited to the trial court, there is a reasonable probability the testimony would have been admitted. Considering the evidence of erratic behavior and lack of motive, there is a reasonable probability the defense would have been accepted by the jury. If that authority had been cited to the appellate court, the court would have had to distinguish or follow it.

By indirection it has been held that counsel's failure to cite *Shipman* was ineffective assistance:

> Appellant contends he was denied effective assistance of counsel at trial because they were unaware and failed to assert what appellant urges as a viable defense under § 552.010, V.A.M.S.: "drug abuse with psychosis." (footnote omitted) The Missouri standard for establishing ineffective assistance of counsel is whether "there has been such failure on the part of the attorney that defendant has not had a fair trial." (citations omitted) For the omission to constitute ineffective assistance of counsel appellant must show the suggested defense was one which trial counsel could have legitimately asserted on his behalf. He has not so shown. Drug abuse, absent psychosis, is not a defense under § 552.010; therefore, *psychosis is the determinative factor.* It is clear his trial attorneys considered the possibility of mental disease or defect, including psychosis, and after diligent effort concluded none was present. The best available evidence, the psychiatric evaluations, support the conclusion that Boyer was not psychotic when he committed the crime. The point is without merit. (emphasis added)

*Boyer v. State,* 527 S.W.2d 432, 437 (Mo. App.1975).

In *Mouse,* the rejected testimony was that Appellant was psychotic. Counsel failed to cite to the court the most persuasive statement to establish the admissibility of that evidence. In effect, counsel failed to effectively assert a viable defense under § 552.010.

I am firmly convinced that a mistake has been made and that Appellant did not have effective assistance of counsel within the meaning of Rule 29.15. I would reverse the decision of the motion court.